**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| 18W HOLDINGS, INC., <br><br>   Plaintiff/Counter-Defendant, <br><br> v. <br><br> SING FOR SERVICE, LLC *d/b/a* MEPCO, <br><br>   Defendant/Counter-Plaintiff/Third-Party Plaintiff, <br><br> v. <br><br> MEM INVESTMENTS, INC. <br><br>   Third-Party Defendant. | Civil Action No. 20-15007 (SDW) (LDW) <br><br> **OPINION** <br><br> March 9, 2023 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff 18W Holdings, Inc.'s ("Plaintiff" or "18W") and Third-Party Defendant MEM Investments, Inc.'s ("MEM") Motion (D.E. 72) to Partially Dismiss Defendant Sing for Service, LLC's ("Defendant" or "Mepco") Amended Counterclaim and Third-Party Complaint (D.E. 57 (the "Third-Party Complaint")), for failure to state a claim pursuant to Federal Rules of Civil Procedure ("Rules") 9(b) and 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, 18W and MEM's motion is **GRANTED IN PART and DENIED IN PART**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**[1]

Defendant is a Delaware company, with its principal place of business in Illinois, that funds and services payment plans for sellers of extended vehicle warranties, also known as vehicle service contracts ("VSCs"). (D.E. 57 ¶¶ 5, 11–12.)  Plaintiff, 18W, is a New Jersey corporation that sells VSCs. (*Id*. ¶¶ 6, 13.)  Third-Party Defendant, MEM, is a New Jersey corporation that Defendant alleges has the same principals as 18W—namely, Michael LaMotta, Michael Wymard, and Edvie Castro. (*Id*. ¶¶ 3, 5, 7.)  Defendant alleges that MEM is the 60% owner of a non-party corporation, AA Auto Holdings ("Auto Holdings"), and that—due to ongoing litigation among the owners of Auto Holdings—the principals of MEM formed 18W intending it to be a successor company to Auto Holdings. (*Id*. ¶¶ 3, 29, 39.)  The principals of MEM had an established practice of creating successor companies that continued the operations of a prior company. (*Id*. ¶¶ 30–35.)

In October 2019, Defendant and 18W entered into a contract whereby Defendant agreed to fund and service payment plans for VSCs that 18W sold to purchasers. (*Id*. ¶ 13; *see id.* Ex. A (the "Dealer Agreement") § 1(c) (referring to the parties' arrangement as the "Payment Plan Program").)  Defendant's funding enabled 18W to offer purchasers of its VSCs the option of paying for the VSC in monthly installments. (D.E. 57 ¶ 15.)  Purchasers could cancel their VSCs with 18W at any time and, if they canceled, 18W was obligated under the Dealer Agreement to refund a certain amount to Defendant to make Defendant whole. (*Id*. ¶ 17; Dealer Agreement § 7.)  Section 7 of the Dealer Agreement gave Defendant additional protections in the event of cancellation or anticipated cancellation, including the right to withhold funding due to 18W if

---

[1] For purposes of the present Motion, the facts are drawn from the Third-Party Complaint and accepted as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

2

Defendant "in its sole discretion, reasonably deem[ed] itself insecure," until it "reasonably deem[ed] itself secure" again. (D.E. 57 ¶¶ 2, 19–20; Dealer Agreement § 7.)

At the time Defendant entered into the Dealer Agreement with 18W, Defendant was party to a separate but "virtually identical" Dealer Agreement with Auto Holdings ("the Auto Holdings Agreement"). (D.E. 57 ¶¶ 3, 28.) Shortly after the Dealer Agreement was executed, Auto Holdings defaulted in its obligations to Defendant under the Auto Holdings Agreement, leaving Defendant at a significant financial loss. (*Id*. ¶¶ 60, 62–63.) Auto Holdings is now unable to pay its debts to Defendant, so Defendant seeks to recover from 18W as its successor, alleging that 18W is a mere continuation of Auto Holdings and thus assumed its liabilities. (*Id*. ¶¶ 47–59, 63, 80–84.) Defendant also alleges that 18W directly caused this loss by inducing the purchasers of VSCs with Auto Holdings to cancel their VSCs with Auto Holdings and enter a new VSC with 18W. (*Id*. ¶ 62–63, 66.)

Defendant alleges that it agreed to enter into the Dealer Agreement with 18W based on verbal assurances by representatives of 18W and MEM that Auto Holdings would continue to pay amounts due to Defendant under the Auto Holdings Agreement. (*Id*. ¶ 36–40.) Specifically, in September 2019 conversations, LaMotta told Defendant's representative Tony Wong that, if Defendant signed the Dealer Agreement with 18W, "MEM would ensure that all of Auto Holdings's cancel repayment obligations to [Defendant] were paid." (*Id*. ¶ 37.) However, LaMotta requested that Defendant agree to conduct its financial dealings with 18W and Auto Holdings separately. (*Id*. ¶ 39.) Defendant "agreed to enter into a new agreement with 18W and to keep Auto Holdings'[s] liability separate from 18W's liability." (*Id*. ¶ 40.) The Dealer Agreement does not reference AA Auto, and it contains an express integration clause stating that it "contains the entire agreement . . . and supersedes any previous and contemporaneous

3

negotiations, representations, and agreements between the parties with respect to such subject matter, whether written or verbal." (Dealer Agreement § 13(j).)

The Dealer Agreement took effect in January 2020. (*Id*. ¶ 41.) In March 2020, Auto Holdings defaulted in its obligations to Defendant, despite contemporaneous assurances by LaMotta and others that MEM and 18W would ensure Auto Holdings paid its liabilities to Defendant. (*Id*. ¶¶ 21, 41–45, 67.) Based on this default and other factors, Defendant deemed itself insecure with respect to its potential cancellation liability, and thus exercised its right to withhold funding due to 18W under the Dealer Agreement. (*Id*. ¶¶ 20–22.) On March 27, 2020, 18W informed Defendant in writing that it was terminating the Dealer Agreement. (*Id*. ¶ 24.)

Plaintiff filed this action on October 26, 2020, and filed the Amended Complaint on May 26, 2021. (D.E. 1, 25.)[2] The Amended Complaint asserted claims for breach of contract (Count I); fraud, based on Defendant's efforts to collect the debts of AA Auto through Plaintiff (Count II); tortious interference with prospective economic advantage (Count III); breach of the implied covenant of good faith and fair dealing (Count IV); and fraud, in inducing Plaintiff to enter into the Dealer Agreement based on false promises (Count V). On December 27, 2021, upon Defendant's motion, this court dismissed Counts II–V of the Amended Complaint without prejudice. (D.E. 25, 33, 34.) On May 20, 2022, Plaintiff filed a Second Amended Complaint asserting nine claims against Defendant, which remain pending. (D.E. 53, 55.)

On June 10, 2022, Defendant filed an Answer, Amended Counterclaim against 18W, and Third-Party Complaint against MEM ("The Third-Party Complaint"). (D.E. 57). The Third-Party

---

[2] Prior to the instant lawsuit, Defendant filed a claim for declaratory judgment against Plaintiff in the Northern District of Illinois. That district court granted Plaintiff's motion to transfer that action to this forum and dismissed Defendant's declaratory judgment claim without prejudice. *See Sing for Serv., LLC v. 18W Holdings, Inc.*, Civ. No. 20-4018, 2021 WL 392701 (N.D. Ill. Feb. 4, 2021). In 2022, this Court consolidated the transferred case with the instant action. (*See* D.E. 40.)

4

Complaint asserts the following claims: breach of the Dealer Agreement against 18W (Count I); tortious interference with contracts between Defendant and purchasers of VSCs, against 18W (Count II); successor liability for Auto Holdings's debts, against 18W (Count III); fraud against 18W and MEM (Counts IV and V); civil conspiracy to commit fraud against 18W and MEM (Count VI); breach of oral contract against MEM (Count VII); and promissory estoppel against MEM (Count VIII). (D.E. 57 ¶¶ 68–112.) On August 15, 2022, 18W and MEM moved to dismiss Counts IV–VIII of the Third-Party Complaint, and the parties have completed briefing. (D.E. 72, 74, 77.)[3]

## II.     LEGAL STANDARDS

An adequate complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim for relief must be "plausible" and a complaint will not survive a motion to dismiss if the "well-pleaded facts do not permit the court to infer more than the mere possibility" of defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (noting that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

Insofar as a complaint alleges fraud or misrepresentation, it "must state with particularity the circumstances constituting fraud," although "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs can satisfy this

---

[3] Defendant's opposition brief does not comply with Local Rule 7.2, which states that all briefs "shall include a table of contents and a table of authorities." Local R. 7.2(b). Going forward, Counsel is advised that non-conforming submissions may be disregarded.

5

heightened standard by alleging "the who, what, when, where, and how of the events at issue," but they need not include "the date, time, place, or content of every single allegedly false [] claim." *United States ex rel. Bookwalter v. Univ. of Pitt. Med. Ctr.*, 946 F.3d 162, 176 (3d Cir. 2019) (quotation marks omitted).

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.  DISCUSSION

18W and MEM argue that Defendant's fraud claims in Counts IV–VI are not pleaded with the specificity required by Rule 9(b), barred by the integration clause in the Dealer Agreement, and based on a statement of expectation of future performance which cannot be the basis of a fraud claim; that Count VII is based on an oral contract and thus barred by New Jersey's statute of frauds; and that the promissory estoppel claim in Count VIII is insufficiently pleaded and improper because express contracts govern the same liabilities. (*See* D.E. 72-1 at 6–23.) For the reasons discussed below, this Court will deny the motion except with regard to Count VII, which Defendant concedes should be dismissed. (*See* D.E. 74 at 18.) Discovery is required to determine many of the details of Defendant's claims, but the claims discussed herein are sufficiently pleaded.

### A. Fraud and Conspiracy to Commit Fraud (Counts IV, V, and VI)

Count IV asserts that 18W knowingly made false statements of material fact with intent to induce Defendant to enter into the Dealer Agreement, and that Defendant relied on the truth of these statements in agreeing to enter into and abide by the Dealer Agreement. (D.E. 57 ¶¶ 86–90.) Count V asserts that MEM did the same, and Count VI asserts that 18W and MEM acted in agreement with the unlawful purpose of committing this fraud. (*Id.* ¶¶ 92–96, 98–101.) The five elements of common-law fraud or fraudulent inducement in New Jersey are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the [complaining party]; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997); *see RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012).[4] "[A] civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act," and the underlying unlawful act must be actionable for a conspiracy claim to stand. *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (quotation marks omitted).

"It is manifestly unreasonable for a party to rely on prior oral statements when the express language of the contract is written explicitly nullifying any previous agreements, oral or written." *RNC Sys., Inc.*, 861 F. Supp. 2d at 454. However, an agreement's integration clause will not bar claims that are extrinsic to the subject matter addressed in the agreement, and "the introduction of extrinsic evidence to prove fraud in the inducement is a well-recognized exception

---

[4] The Dealer Agreement expressly provides that New Jersey law applies to this action, which was initially brought by 18W against Defendant. (*See* Dealer Agreement § 13(a).)

to the parol evidence rule." *Walid v. Yolanda for Irene Couture, Inc.*, 40 A.3d 85, 94 (N.J. App. Div. 2012).

The Third-Party Complaint contains sufficient allegations to state fraud claims against 18W and MEM, separately and as co-conspirators. *See* Fed. R. Civ. P. 9(b); *United States ex rel. Bookwalter*, 946 F.3d at 176. With regard to the first element of a fraud claim, Defendant alleges that LaMotta verbally assured Wong during conversations in September 2019 that he and the other principals of 18W and MEM would ensure Auto Holdings continued to pay its liabilities to Defendant, inducing Defendant to enter into the Contract. (D.E. 57 ¶¶ 36–40.) Defendant alleges with even greater detail that LaMotta and an employee of 18W, Donna Clark, assured Defendant through emails and phone calls in mid-March 2020 that they would pay Auto Holdings's remaining liability to Defendant. (D.E. 57 ¶¶ 41–46.) Although the March 2020 conduct occurred after the contract was executed, the allegations of specific dates and quotes from the emails substantiates Defendant's claims that LaMotta made material misrepresentations to Defendant. *See In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (stating that plaintiffs may use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud" where they do not allege specific dates and times (quotation marks omitted)).

Defendant sufficiently alleges that these were misrepresentations of a *presently* existing fact at the time they were made, and not inactionable statements of future performance, because Defendant alleges that LaMotta and Clark made these statements with knowledge or belief that they were false. (D.E. 57 ¶¶ 87, 93.) A misrepresented "fact" must be something "susceptible of exact knowledge at the time it is made," so statements as to "future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." *Read v. Profeta*, 397 F. Supp.

8

3d 597, 636 (D.N.J. 2019) (quotation marks omitted).  However, allegations that a party made a promise to perform when it "did not intend to fulfill the promise" at the time the promise was made are sufficient to allege a misrepresentation of a presently existing fact.  *Id*. (quotation marks omitted).  Defendant sufficiently pleads the second, third, and fifth elements of its fraud claims by alleging that these misrepresentations were made with knowledge of their falsity, were intended to induce Defendant to enter into and continue to provide funding under the Dealer Agreement, and caused damages.  (D.E. 57 ¶¶ 87–90, 93–96.)

As for the fourth element, Defendant has sufficiently alleged that it reasonably relied on 18W and MEM's misrepresentations.  (*See* D.E. 57 ¶¶ 39, 89, 95, 110.)  This Court is not persuaded by 18W and MEM's arguments that the integration clause made it unreasonable for Defendant to rely on the alleged misrepresentations or that that clause bars Defendant's fraud claims, which are based on verbal communications.  The Dealer Agreement between Defendant and 18W contained an express integration clause, which stated:

> Entire Agreement. This Agreement, together with any policies, procedures, documents, notice, or other evidence of any kind related to [Mepco]'s requirements, policies, and procedures for the Payment Plan Program or any aspect of the Payment Plan Program, contains the entire agreement between the parties regarding its subject matter and supersedes any previous and contemporaneous negotiations, representations, and agreements between the parties with respect to such subject matter, whether written or verbal.

(Dealer Agreement § 13(j).)  This integration clause does not bar fraud claims against MEM because MEM was not one of the "parties" to this or any other contract with Defendant.  (*See* D.E. 74 at 2).  It also does not bar—or make implausible—Defendant's fraud claims against 18W, because it only integrates 18W and Defendant's agreements "with respect to such subject matter," and Auto Holdings and its liabilities to Defendant are not discussed anywhere in the Dealer Agreement.  *See Walid*, 40 A.3d at 94; *RNC Sys., Inc.,* 861 F. Supp. 2d at 454.  Defendant substantiates its claim that it was *reasonable* to rely on these misrepresentations, notwithstanding

9

the integration clause, by alleging that MEM gave a benign explanation for wanting to deal with Auto Holdings and 18W separately, which was that MEM's principals were involved in litigation with other principals of Auto Holdings. (D.E. 57 ¶¶ 39, 110.)

The Third-Party Complaint also sufficiently states a claim for conspiracy to commit fraud. It alleges that at least two individuals made specific, fraudulent misrepresentations at the same time period, LaMotta and Clark. LaMotta was a principal of both MEM and 18W, but it is alleged that he made misrepresentations while acting on behalf of MEM prior to the formation of 18W. (D.E. 57 ¶ 37.) Clark was an employee of 18W, and it is alleged that she emailed Defendant saying she would "go over" the issue of Auto Holdings's liability with LaMotta, in the same time period that both individuals made the fraudulent claims discussed above. (D.E. 57 ¶¶ 42–45.) This is sufficient to state a claim that 18W and MEM, through these two individuals, acted in concert to commit the underlying fraud. *See Banco Popular N. Am.*, 876 A.2d at 263; *United States ex rel. Bookwalter*, 946 F.3d 176.

### B. Promissory Estoppel (Count VIII)

Count VIII is based on the same allegations as Defendant's fraud claims, but is brought only against MEM, with whom Defendant had no written contract. (*See* D.E. 57 ¶¶ 108–12; D.E. 74 at 2). To state a claim for promissory estoppel in New Jersey, a plaintiff must establish "four elements: (1) a clear and definite promise; (2) made with the expectation that the [plaintiff] will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008). "The terms of a promise or agreement are those expressed in the language of the parties or implied in fact from other conduct." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 752 (N.J. 1996) (quoting *Restatement (Second) of Contracts* § 5 comment a (1979)).

10

The Third-Party Complaint sufficiently states a claim for promissory estoppel. Among other promises, it alleges that LaMotta, acting on behalf of MEM, made verbal promises in September 2019 that MEM would "ensure" that Auto Holdings's liabilities were paid to Defendant, "if" Defendant entered into a new agreement with 18W. (D.E. 57 ¶¶ 37–39.) This promise is sufficiently clear. As previously discussed, Defendant also alleges facts showing that it was reasonable to rely on this promise, and that it did in fact rely on this and related promises to its detriment. (*See* D.E. 57 ¶¶ 39, 110.) This Court finds these allegations sufficient to state the elements of a promissory estoppel claim, including a clear promise that Defendant reasonably relied upon. *See Toll Bros*, 944 A.2d at 19. And while a claim for promissory estoppel "cannot be maintained where a valid contract fully defines the parties' respective rights and obligations," MEM was not party to any contract with Defendant, so this claim may proceed. *Hillsborough Rare Coins, LLC v. ADT LLC*, 2017 WL 1731695, at *6 (D.N.J. May 2, 2017) (quotation marks omitted).

## IV.   CONCLUSION

For the reasons set forth above, this Court finds that Defendant has sufficiently pleaded actionable claims for fraud and promissory estoppel. Accordingly, 18W and MEM's Motion to Dismiss is **DENIED**, except with respect to Count VII, which is **DISMISSED WITH PREJUDICE** on consent. (D.E. 74 at 18.) An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:        Leda D. Wettre, U.S.M.J.
            Parties