UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| 18W HOLDINGS, INC., <br><br> *Plaintiff/Counter-Defendant*, <br><br> v. <br><br> SING FOR SERVICE, LLC D/B/A MEPCO, <br><br> *Defendant/Counter-Plaintiff/Third-Party Plaintiff*, <br><br> v. <br><br> MEM INVESTMENTS, INC., <br><br> *Third-Party Defendant.* | No. 20-cv-15007 (MEF)(LDW) <br><br> **OPINION and ORDER** |

**Table of Contents**

**I.   Background**
    **A.   The Facts**
    **B.   The Lawsuit**
    **C.   The Motions**
    **D.   The Court's Approach**
**II.  General Principles**
    **A.   Summary Judgment**
    **B.   Applicable Law**
**III. What Evidence Can Be Considered?**
    **A.   Background**
    **B.   The Question**

      **C.**    **The Contract**

      **D.**    **The Law**

           **1.**    **History**

           **2.**    **Cases**

           **3.**    **Rationale**

           **4.**    **New Jersey Law**

      **E.**    **Conclusion**

**IV.**    **The Merits**

**V.**    **Other Claims**

      **A.**    **The Implied Covenant of Good Faith**

      **B.**    **Unjust Enrichment**

**VI.**    **Conclusion**

\*   \*   \*

Under a contract between them, one company owed money to another company, but did not pay.

The company out of money sued, alleging, among other things, a breach of their contract.

The companies now move for summary judgment.

Their motions are resolved as set out below.

\*   \*   \*

**I.**    **Background**

      **A.**    **The Facts**

The undisputed facts are as follows.

In 2019, a company[1] entered into an agreement ("the Agreement"[2]) with a second company.[3]  See Agreement at 1.

---

[1]  18W Holdings, Inc.

[2]  The Agreement is at Exhibit A of the Plaintiff's Cross-Motion for Summary Judgment.

[3]  Sing for Service, LLC d/b/a Mepco.

2

Under the Agreement, the second company was required to make certain payments to the first company. See id. § 4.[4]

But not in certain circumstances:

> In the event [the second company], in its sole discretion, <u>reasonably deems itself insecure</u>, [the second company] shall have the right to retain any funds due [the first company] until [the second company] reasonably deems itself secure.

Id. § 7 (emphasis added).

In 2020, the second company stopped making required payments. See Defendant's Statement of Material Facts ¶ 160; Plaintiff's Statement of Material Facts in Opposition ¶ 160; see also Defendant's Motion for Summary Judgment, Exhibit 28; Agreement § 4 (describing required payments).

### B.  The Lawsuit

In light of the above, the first company (from here, "the Plaintiff") sued the second company (from here, "the Defendant").[5]

One of the claims is for breach of contract.[6]

### C.  The Motions

Discovery is now complete.

---

[4] Note that payment obligations ran the other way, too --- there were also payments that the first company had to make to the second. See Agreement §§ 5, 7 & Exhibit A.

[5] The Plaintiff is 18 Holdings, Inc., and the Defendant is Sing for Service, LLC d/b/a Mepco.

[6] The Complaint also includes various tort claims. See Second Amended Complaint ("Complaint") ¶¶ 134-62, 170-85. Those are not taken up here. And the Complaint presses an unjust enrichment claim, see id. ¶¶ 127-33, and a claim for a breach of the implied covenant of good faith and fair dealing. See id. ¶¶ 115-26. Those are analyzed in Part V below.

3

As to the breach of contract claim, the Plaintiff and the Defendant have moved for summary judgment.[7]

Their core dispute: was the Defendant justified in holding back money because it "reasonably deem[ed] itself insecure"?

The Defendant says it was justified, and that its non-payment therefore did not violate the Agreement. See Defendant's Motion for Summary Judgment at 11–14.

The Plaintiff disagrees. It argues the Defendant had no sufficient justification, and that failure to pay therefore counts as a breach of the Agreement. See Plaintiff's Cross-Motion for Summary Judgment at 13–18.

The parties' motions are before the Court.

### D. **The Court's Approach**

To analyze the motions, the Court first lays out the overarching principles that govern assessment of summary judgment motions, see Part II.A, and then determines that New Jersey law controls the substantive issues in play here. See Part II.B.

Next comes a key threshold issue --- whether there are categorical limits on the type of evidence of "insecur[ity]" the Court can consider. The Court's bottom line: under New Jersey law, there are no such limits. See Part III.

Accordingly, the Court looks to the full body of the proffered evidence. The Court's conclusion from this evidence: it cannot be said as a matter of law that the Defendant was either "reasonabl[e]" or "[un]reasonabl[e]" in "deem[ing]" itself "insecure." Therefore, that question is for the jury and the breach of contract summary judgment motions must be denied. See Part IV.

Finally, the Court briefly takes up two more claims, concluding that one claim (breach of the implied covenant of good faith and fair dealing) should not be dismissed, see Part V.A, and that another claim (unjust enrichment) should be. See Part V.B.

---

[7] There is also a Third-Party Defendant, MEM Investments, Inc. It has joined in the argument as to the Plaintiff's summary judgment motion. See Plaintiff's Cross-Motion for Summary Judgment at 2–3.

4

## II. General Principles

### A. Summary Judgment

The parties, as noted, have moved for summary judgment.

A court must grant such a motion if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023); Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 100 (3d Cir. 2023).

"A factual dispute is material if it might affect the outcome of the suit under the governing law." Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Such a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-04 (3d Cir. 2022) (cleaned up).

In assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence[.]" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). Instead, the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Canada, 49 F.4th at 345 (cleaned up); accord Tolan v. Cotton, 572 U.S. 650, 660 (2014).

"On cross-motions for summary judgment, the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made." Pichler v. UNITE, 542 F.3d 380, 386 (3d Cir. 2008) (cleaned up).

### B. Applicable Law

In this diversity case, New Jersey's choice-of-law rules determine the body of substantive law that applies. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) (requiring federal courts sitting in diversity to follow the forum state's choice-of-law rules).

Under those rules, it is New Jersey substantive law that governs here.

5

This is for two reasons.

First, per New Jersey choice-of-law rules, when parties contractually agree on the controlling body of law, their shared choice is generally enforced. See Instructional Sys., Inc. v. Comput. Curriculum Corp., 130 N.J. 324, 341 (1992); see also Tryp Hotels Worldwide, Inc. v. Sebastian Hotel, LLC, 726 F. Supp. 3d 373, 381 n.7 (D.N.J. 2024).

In this case, the Agreement provides that if 18W Holdings, Inc., sues first, as happened here, then the case is governed by New Jersey substantive law. See Agreement § 13(a).

Second, the parties' briefs assume New Jersey law controls. See, e.g., Defendant's Motion for Summary Judgment at 22, 24 (discussing New Jersey law); Plaintiff's Cross-Motion for Summary Judgment at 16, 18–32 (same).

And that is enough, even on its own, to establish that New Jersey substantive law applies. See Marino v. Brighton Gardens of Mountainside, 697 F. Supp. 3d 224, 229 (D.N.J. 2023) (collecting cases); Smith v. CitiMortgage, Inc., 702 F. Supp. 3d 247, 253 (D.N.J. 2023).

### III. What Evidence Can Be Considered?

As noted, see Part I.C, the Plaintiff's breach of contract claim boils down to whether the Defendant "reasonably deem[ed] itself insecure."

But before getting to the merits of the issue, see Part IV, there is an evidentiary question to first resolve.

After some background, see Part III.A, the evidentiary question is laid out, see Part III.B, and then resolved, see Part III.C–D.

#### A. Background

The Plaintiff was closely related to another company ("Related Company"[8]). See Defendant's Statement of Material Facts ¶¶ 32, 41; Plaintiff's Statement of Material Facts in Opposition ¶¶ 32, 41.

For example, the Plaintiff and the Related Company had all-but the same management. Compare Defendant's Statement of Material

---

[8]  AA Auto Holdings, LLC.

6

Facts ¶¶ 32, 35-36 and Plaintiff's Statement of Material Facts in Opposition ¶¶ 32, 35-36 with Defendant's Statement of Material Facts ¶¶ 40-43 and Plaintiff's Statement of Material Facts in Opposition ¶¶ 40-43; see also Plaintiff's Cross-Motion for Summary Judgment, Exhibit C at 37:4-17.

The Related Company had a contract with the Defendant. See Defendant's Motion for Summary Judgment, Exhibit 14. That contract was virtually identical to the Agreement that the Plaintiff and the Defendant had with each other. Compare Defendant's Motion for Summary Judgment, Exhibit 14 with Agreement.

During 2020, the Related Company assertedly began to fall behind on payments it contractually owed to the Defendant. See Defendant's Motion for Summary Judgment, Exhibit 28.

This, per the Defendant, made it "insecure[e]." See id., Exhibit 31 at 1; see also Defendant's Motion for Summary Judgment at 12.

The Related Company's failure to perform, the argument goes, made the Defendant concerned that the Plaintiff would fail to perform. See Defendant's Motion for Summary Judgment, Exhibit 31 at 1-2.

### B. The Question

The evidentiary question on the table: in assessing the Defendant's asserted "insecurity," can the Court consider only the Defendant's interactions with the Plaintiff under the Agreement? Or can the Court also consider the Defendant's interactions with the Related Company, which was not a party to the underlying Agreement?

The parties disagree as to the answers to these questions. Compare Plaintiff's Cross-Motion for Summary Judgment at 15-17 (answering yes to the first question, no to the second) with Defendant's Motion for Summary Judgment at 12-13 (the opposite).

The Court's conclusion: all relevant evidence can be assessed, including evidence as to the Defendant's interactions with the Related Company.

The Agreement does not purport to push aside the pre-existing, background law that indicates the evidence that may be considered in this context. See Part III.C. And under that

7

body of background law, the Court can scrutinize the full range of relevant evidence. See Part III.D.

## C. The Contract

To start off the analysis, look again to the Agreement.[9]

> In the event [the Defendant], in its sole discretion, reasonably deems itself insecure, [the Defendant] shall have the right to retain any funds due [the Plaintiff] until [the Defendant] reasonably deems itself secure.

Agreement § 7.

As to substance, this gives the Defendant a right (the right to withhold money) in the event of "insecur[ity]."

As to process, the Agreement covers some familiar terrain, but not all of it.

To see the point, note that when a disagreement crops up in virtually any context the key process questions often include the following three. First, who decides? Second, to what standard do they decide? And third, based on what evidence do they decide?

The quoted part of the Agreement answers the first question. It is the Defendant that decides whether it is insecure. See id. § 7 ("[The Defendant], in its sole discretion," may "deem[] itself insecure").

---

[9] Under New Jersey law, courts must enforce contracts as they are written. See Kotkin v. Aronson, 175 N.J. 453, 455 (2003) ("[W]e cannot make . . . a better or more sensible contract than the one they made for themselves."). And all the more so where, as here, the parties are sophisticated commercial entities, and their contract sets out the ground rules for their business arrangements with each other. See In re Hertz Corp., 120 F.4th 1181, 1192 (3d Cir. 2024); Woodhaven Lumber & Millwork, Inc. v. Monmouth Design & Dev. Co., 2014 WL 1326994, at *6 (N.J. Super. Ct. App. Div. Apr. 4, 2014); E. Brunswick Sewerage Auth. v. E. Mill Assocs., Inc., 365 N.J. Super. 120, 127 (App. Div. 2004); cf. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 242 (2008).

And the Agreement answers the second question, too. The Defendant must make its insecurity decision to the standard of reasonableness. See id. (indicating the Defendant's decision must be "reasonabl[e]").

But the Agreement is silent as to the third question. It says nothing about the categories of evidence the Defendant can or cannot look to.

This means that the Agreement leaves things as they were as to evidence type. The Agreement does not purport to displace or alter pre-existing law as to the sort of evidence that can be considered. The parties, through the Agreement, did not try to tweak the law's default setting. They left it alone --- untouched, where they found it.

Accordingly, the question here (what evidence can count?) is not to be answered by close analysis of contractual language. Indeed, the Agreement includes no language that is on-point.

Rather, the question is to be answered with reference to the background law, which the parties opted not to move away from.

### D.  The Law

To answer the what-evidence-can-count question, begin by noting that "insecurity" is a term of art.[10]

Under New Jersey law, a term of art is interpreted in light of its meaning in the particular context from which it emerged. See M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 392 (2002); Rathblott v. PeopleStrategy, Inc., 685 F. App'x 107, 108 (3d Cir. 2017); Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1013 (3d Cir. 1981); see also Restatement (Second) of Contracts § 202(3)(a).

As a term of art, "insecurity" means "[h]aving a good-faith belief that the possibility of receiving payment or performance from another party to a contract is unlikely," Insecure, Black's Law Dictionary (12th ed. 2024) --- including such a belief, as

---

[10] At least in cases like this one. Here, insecurity is used in a commercial contract between sophisticated parties to describe when one of the parties does not need to comply with certain contractual obligations --- and the term is not explicitly defined in the contract.

9

will be explained below, based on any category of relevant evidence.

### 1. History

To begin seeing the point, imagine a factory. Hypothesize that it is contractually required to deliver a large shipment of tires to a New Jersey car company next Thursday, at which point the car company will pay for the tires. But in the lead-up to the delivery day, things begin to look dicey --- and it comes to appear highly unlikely that there will be an on-time tire drop-off.

Under a classic principle of Anglo-American contract law, the car company would be left with no fix until Thursday comes and goes with no tire delivery. As Justice Holmes put it: the "degree of [a party's] ability at any moment before he was called on to pay was no concern[.]" Lowe v. Harwood, 139 Mass. 133, 135 (1885) (emphasis added).

To some observers, this seemed like the wrong way to think about things. What if the car company could be all-but certain in advance that the tires were not going to make it by Thursday? Why should the car company have to sit on its hands and wait for the inevitable? What about the impact on its customers? How could there be no legal remedy to pursue before the sure-to-be-missed delivery deadline?

To address these issues, the drafters of the Uniform Commercial Code developed the concept of insecurity. See generally Larry T. Garvin, Adequate Assurance of Performance: Of Risk, Duress, and Cognition, 69 U. Colo. L. Rev. 71, 89-95 (1998) (describing the relevant history); Michael J. Borden, The Promissory Character of Adequate Assurances of Performance, 76 Brook. L. Rev. 167, 171-76 (2010) (same).[11]

A party would be deemed insecure if there was sufficient reason to think that its counterparty could not or would not uphold its end of a contract. See U.C.C. § 2-609, cmts. 1, 3. In turn, an insecure party would be able to use certain remedies that

---

[11] The concept of insecurity has spread beyond the Uniform Commercial Code context. See, e.g., 13 Williston on Contracts § 39:40 (4th ed. 2024) ("[A] sense of security is an implicit feature of every contract."); cf. Restatement (Second) of Contracts § 251.

10

traditional contract law did not itself offer.  Compare, e.g., Lowe, 139 Mass. at 135 with U.C.C. § 2-609(1).

### 2. Cases

Against the above backdrop, courts over the years have repeatedly been required to determine whether an entity is insecure --- and as part of doing so, to consider the body of evidence that such a determination can appropriately rest on.

The stepping-off point for the law that has developed is the Uniform Commercial Code.  It is explicit: "a ground for insecurity need not arise from or be directly related to the contract in question."  U.C.C. § 2-609, cmt. 3; accord, e.g., Waldorf Steel Fabricators v. Consolidated Sys., Inc., 1996 WL 480902, at *4 (S.D.N.Y. Aug. 23, 1996).[12]

And courts around the Nation have landed on the same conclusion. See, e.g., Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 181–82 (App. Div. 2008) (assessing a contracting party's insecurity in light of an "internal feud between . . . [its counterparty's] shareholders" --- a feud that did not grow out of the underlying contract) (New Jersey law); see also, e.g., Clem Perrin Marine Towing, Inc. v. Panama Canal Co., 730 F.2d 186, 191 (5th Cir. 1984) (assessing a contracting party's insecurity in light of evidence that a third party was stepping in to pay for the counterparty's contractual obligations) (federal maritime law and federal common law); Top of Iowa Coop. v. Sime Farms, Inc., 608 N.W.2d 454, 467 (Iowa 2000) (assessing a contracting party's insecurity in light of evidence that "the market conditions existing" for the counterparty were difficult) (Iowa law); Smyers v. Quartz Works Corp., 880 F. Supp. 1425, 1433 (D. Kan. 1995) (assessing a contracting party's insecurity based on evidence that the counterparty was in breach of a different contract with a different party) (Kansas law); Lubrication & Maint., Inc. v. Union Res. Co., 522 F. Supp. 1078, 1082 (S.D.N.Y. 1981)

---

[12]  An earlier version of the New Jersey Sales Act, the state's codification of the Uniform Commercial Code, seems to have been in the same vein; it provided that "[a]ny facts which should indicate . . . that the promised performance might not be forthcoming when due should be considered reasonable grounds for insecurity."  Diskmakers, Inc. v. DeWitt Equip. Corp., 555 F.2d 1177, 1179 (3d Cir. 1977) (quoting N.J.S.A. 12A:2-609).

11

(assessing a contracting party's insecurity based on the counterparty's "financial difficulties and its litigation with one of its shareholders") (New York law); cf. K.G. Tile, LLC v. Summitville Tiles, Inc., 2022 WL 426000, at *8 (D. Md. Feb. 11, 2022) (assessing a contracting party's insecurity in light of evidence that a counterparty was falling behind on a different contract with the same party) (Maryland law); Rocheux Int'l of N.J., Inc. v. U.S. Merchs. Fin. Grp., Inc., 741 F. Supp. 2d 651, 673 (D.N.J. 2010) (assessing a contracting party's insecurity in light of evidence that the counterparty was in breach of a different contract with the contracting party) (New Jersey law); Simcala, Inc. v. Am. Coal Trade, Inc., 821 So.2d 197, 204 (Ala. 2001) (assessing a contracting party's insecurity in light of evidence that the counterparty "had lost its supplier" as to the underlying contract) (Alabama law); but see Design for Bus. Interiors, Inc. v. Herson's, Inc., 659 F. Supp. 1103, 1112 (D.D.C. 1986) (District of Columbia law).

The cases, in short, reflect a virtually-unanimous national consensus: in considering whether a party is insecure for the purposes of a particular contract, all relevant evidence may be considered --- not just evidence as to how the contracting party's counterparty has been performing under the contract.[13]

### 3. Rationale

Why has the law come to rest here as set out just above?

To answer, start by noting that it matters whether a party is insecure because an insecure party is entitled to seek assurance from its counterparty --- that it (the counterparty) will hold up its end of the bargain. See U.C.C. § 2-609(1).

---

[13] The Defendant here did not contract for goods (like tires) it was to get from the Plaintiff. Rather, the Defendant agreed to pay for access to the Plaintiffs' customers, who would provide monthly installment fees to the Defendant. See Defendant's Statement of Material Facts ¶¶ 9, 16; Plaintiff's Response to Statement of Material Facts in Opposition ¶¶ 9, 16; see also Defendant's Motion for Summary Judgment, Exhibit 3 at 33:5-11. But this distinction makes no difference here. Insecurity started off as a Uniform Commercial Code concept. But it is now a ubiquitous part of American commercial law. Moreover, the concept of insecurity was introduced into this case by the parties, who used it in their Agreement. See Part III.C.

Why give the insecure party the option to seek confirmation? Why not just leave the insecure party, as the common law largely did, to an after-the-fact damages remedy?

Because of the common-sense understanding that businesses enter contracts to get actual, completed, real-world performance --- not a damages pay-out. See id., cmt. 1 ("[T]he essential purpose of a contract between commercial men is actual performance[.]").[14]

On this practical-minded approach, there is no sufficient reason to look to only some types of evidence of insecurity.

After all, the kinds of conditions that suggest insecurity --- and that non-performance may be imminent --- sometimes directly relate to the contract in question. But not always.

For example, imagine if the tire factory from above, see Part III.D.1, was contractually obligated to allow a Monday inspection of the tires before their promised Thursday delivery to the New Jersey car company. If the tire company does not allow the Monday inspection, that directly relates to the tire factory/car company contract --- and the no-inspection might

---

[14] This is no obscure idea. It is often cited. See, e.g., BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co., 981 F.3d 618, 623 (7th Cir. 2020); Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp., 163 F.3d 153, 158 (2d Cir. 1998); Corestar Int'l Pte. Ltd. v. LPAB Commc'ns, Inc., 513 F. Supp. 2d 107, 123 n.12 (D.N.J. 2007); Remuda Jet Five LLC v. EMBRAER --- Empressa Brasileira de Aeronautica, S.A., 2012 WL 1142296, at *8 (S.D.N.Y. Mar. 27, 2012); accord, e.g., In re Pac. Gas & Elec. Co., 271 B.R. 626, 639 n.8 (N.D. Cal. 2002); Land O'Lakes, Inc. v. Hanig, 610 N.W.2d 518, 523 (Iowa 2000) (Iowa law); Colo. Interstate Gas Co. v. Chemco, Inc., 854 P.2d 1232, 1240 (Colo. 1993) (en banc) (Colorado law); Sumner v. Fel-Air, Inc., 680 P.2d 1109, 1116 n.17 (Alaska 1984) (Alaska law); Ross Cattle Co. v. Lewis, 415 So.2d 1029, 1035 n.2 (Miss. 1982) (Mississippi law). And it was a cornerstone of the Uniform Commercial Code's approach to the remaking of commercial law. See generally Garvin, Adequate Assurance, 69 U. Colo. L. Rev. at 93 (describing Karl Llewellyn's comments during the drafting of the Uniform Commercial Code); Borden, Promissory Character, 76 Brook. L. Rev. at 199 (similar).

13

imply that non-performance is likely to follow, such that requiring an assurance makes sense.

But serious insecurity can also have causes that have nothing to do with a party's breach of its contractual obligations --- and those types of causes can speak just as clearly to the likelihood of non-performance.

Performance, for example, may also be unlikely if the factory was destroyed by a bad fire. And that is a source of insecurity that does not come from the underlying contract.

Similarly, performance may be unlikely if the tire factory is badly behind on deliveries to its other large customers, say in New York, Pennsylvania, and Delaware. And that, too, is a source of insecurity that is not directly related to the underlying contract between the tire factory and the New Jersey car company.

Bottom line: a main goal of the law in this area is to stave off non-performance by giving insecure parties an ability to seek assurance --- and because insecurity that flows from <u>any</u> source can potentially suggest that non-performance may be coming, it is less than ideal to look to evidence from only <u>some</u> possible sources of insecurity, the ones that flow directly from the underlying contract.

### 4. <u>New Jersey Law</u>

There is a final step. Because the New Jersey Supreme Court has not weighed in on the relevant evidentiary question, discussed throughout this Part, this Court must predict how the New Jersey Supreme Court would rule. <u>See</u>, <u>e.g.</u>, <u>Spence</u> v. <u>ESAB Grp., Inc.</u>, 623 F.3d 212, 216 (3d Cir. 2010); <u>Tryp Hotels</u>, 726 F. Supp. 3d at 387; <u>Schulman</u> v. <u>Zoetis, Inc.</u>, 684 F. Supp. 3d 275, 278 (D.N.J. 2023).

This Court predicts that the New Jersey Supreme Court would stick to the overwhelming national consensus that has been described here.

"[H]ow other jurisdictions answer a legal question can provide a basis for [prediction as to how the New Jersey Supreme Court will rule]." <u>Navigators Specialty Ins. Co.</u> v. <u>Citizens Ins. Co. of Am.</u>, 2024 WL 3287848, at *7 (D.N.J. July 3, 2024).

14

Moreover, a New Jersey intermediate appellate court, see Spring Creek Holding Co., 399 N.J. Super. at 181–82, has hewed to the consensus position on the evidentiary question at issue here.

"[L]ower state court decisions can be a solid data point from which to predict" the Supreme Court's approach. Navigators Specialty Ins. Co., 2024 WL 3287848, at *5.

And all the more so where the "precept" that the decision is based on is "logically sound." Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000). It is here. See Part III.D.4 (describing the logic of the evidentiary rule); cf. Suber v. Chrysler Corp., 104 F.3d 578, 587 (3d Cir. 1997), as amended (Feb. 18, 1997) (predicting that an intermediate appellate decision "would be followed by the New Jersey Supreme Court" because it "seems unexceptionable, uncontroversial, and altogether sensible").

### E. Conclusion

A quick review of where things stand.

The threshold question here is whether the Defendant's asserted insecurity can count --- even though it grew out of its dealings with the Related Company, not out of its interactions with the Plaintiff under the Agreement. See Part III.A-B.

The Agreement does not purport to address this question. Therefore, the Court must answer this question with reference to the background law. See Part III.C.

And that background law is clear, and would be followed by the New Jersey Supreme Court: a court can consider all relevant evidence of a party's insecurity --- even evidence that does not directly relate to its counterparty's actions in connection with the underlying contract. See Part III.D.

Here, that means the Court may assess the Defendant's asserted insecurity using evidence that flows from its dealings with the Related Company --- and not just evidence of it interactions with the Plaintiff under the Agreement.

## IV. The Merits

Did the Defendant "reasonably deem[] itself insecure"?

15

Yes, says the Defendant, and it seeks summary judgment on that basis. See Defendant's Motion for Summary Judgment at 12. No, says the Plaintiff, and it seeks summary judgment on that basis. See Plaintiff's Cross-Motion for Summary Judgment at 17-18.

In this Part, the Court looks to the full range of the proffered evidence, see Part III, and resolves the parties' motions by denying them.

\*   \*   \*

The question of whether an entity had "reasonable grounds for insecurity" is typically a jury question. See, e.g., Diskmakers, 555 F.2d at 1180; Lo Re v. Tel-Air Comms., Inc., 200 N.J. Super. 59, 70-73 (App. Div. 1985) (treating insecurity as a highly fact-sensitive inquiry); Traenkle v. La, 2006 WL 74131, at \*6 (N.J. Super. Ct. App. Div. Jan. 13, 2006) (affirming a jury verdict); accord, e.g., BRC Rubber & Plastics, Inc., 981 F.3d at 623; Clem Perrin Marine Towing, Inc., 730 F.2d at 191; AMF, Inc. v. McDonald's Corp., 536 F.2d 1167, 1170 (7th Cir. 1976).

The motions here help to show why.

\*   \*   \*

As to the Plaintiff's motion, the Defendant is entitled to every "reasonable inference." Canada, 49 F.4th at 345; see also Pichler, 542 F.3d at 386.

And a jury, making every reasonable inference for the Defendant, could conclude that the Defendant has it right --- that it was insecure.

The jury could reasonably see things this way:

The Plaintiff and the Related Company share a parent company. See Defendant's Statement of Material Facts ¶ 25; Plaintiff's Statement of Material Facts in Opposition ¶ 25. And there was a good deal of overlap as to the small set of people who managed both the Plaintiff and the Related Company. Compare Defendant's Statement of Material Facts ¶¶ 32, 35-36 and Plaintiff's Statement of Material Facts in Opposition ¶¶ 32, 35-36 with Defendant's Statement of Material Facts ¶¶ 40-43 and Plaintiff's Statement of Material Facts in Opposition ¶¶ 40-43; see also Plaintiff's Cross-Motion for Summary Judgment, Exhibit C at 37:4-17.

16

The Related Company and the Defendant operated under a contract that was virtually identical to the contract that the Plaintiff and the Defendant worked under.  See Part III.A.

But the Related Company had stopped making certain contractual payments to the Defendant.  See Defendant's Motion for Summary Judgment, Exhibits 22, 28.  And relative to the volume of business done by the Defendant, the withheld payments were large.  See id., Exhibit 30 at 4.

If the same managers, under the same parent company, were withholding payment under one contract --- this raised a strong inference that they could well withhold money due to the Defendant, see footnote 4, under the essentially-the-same Plaintiff-Defendant contract.

In that circumstance, a jury could find, the Defendant would be left insecure.  And if a reasonable jury could find for the Defendant, the Plaintiff's summary judgment motion must be denied.

\*   \*   \*

Now look to the flip side.

As to the Defendant's motion, the Plaintiff is entitled to every "reasonable inference."  Canada, 49 F.4th at 345; see also Pichler, 542 F.3d at 386.

And a jury, making every reasonable inference for the Plaintiff, could conclude that the Plaintiff has it right --- that the Defendant could not "reasonably" see itself as insecure.

The jury could put things together this way:

The Defendant is making a mountain out of a molehill.

The Related Company failed to make payments for only a few weeks.  See Defendant's Motion for Summary Judgment, Exhibit 28.  This was hardly serious --- indeed, the Defendant was not even late on its payments as a formal matter.  See id. (email stating that the Related Company had an outstanding payment); see also id., Exhibit 14 at Exhibit A.

And whatever might or might not have been going on with the Related Company, this had no bearing on the Defendant's interactions with the Plaintiff.  Indeed, the various contracts were closely similar, see Part III.A, but they were separate for

17

a reason --- because the Related Company and the Plaintiff were genuinely distinct entities.

Moreover, the Plaintiff was experiencing no meaningful financial troubles.  See Plaintiff's Cross-Motion for Summary Judgment, Exhibit F (collecting data).

And the Defendant did not contemporaneously protest loudly and say that it was insecure.  Compare Defendant's Motion for Summary Judgment, Exhibit 28 with id., Exhibit 31 at 1.

The inference from all this, a reasonable jury could find, was that the Defendant was not in fact insecure.  Rather, it just wanted an excuse not to make payments it owed.

A jury, in short, could find that the Defendant was not insecure.  That would mean a verdict for the Plaintiff.  And if a reasonable jury could land on a finding for the Plaintiff, the Defendant's summary judgment motion must be denied.

\*   \*   \*

Set out above are starkly different reads on the evidence.  Which is the better one?

Answering that question requires stepping into "a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed."  Nathanson v. Med. Coll. of Pa., 926 F.2d 1368, 1380 (3d Cir. 1991).

And it also requires "credibility determinations" and "weighing of evidence."  Anderson, 477 U.S. at 255.

Those are jobs for the jury --- not jobs to be taken away from the jury, by a judicial grant of summary judgment.  See Nathanson, 926 F.2d at 1380; Anderson, 477 U.S. at 255; see also Maltez v. N. J. Transit Rail Operations, Inc., 2024 WL 3276998, at \*3 (D.N.J. July 1, 2024) ("assessing . . . credibility . . . is for the jury at trial, not for the Court on summary judgment"); Dejewski v. Nat'l Beverage Corp., 735 F. Supp. 3d 511, 524 (D.N.J. 2024) ("evidentiary sifting" as to closely-contested factual issues "is not to be taken away from the jury, and summary judgment must be denied").

Bottom line: the parties' motions for summary judgment are denied to the extent they seek judgment as to the Plaintiff's

breach of contract claim. That claim cannot be resolved as a matter of law. It is for the jury to decide.[15]

### V. Other Claims

#### A. The Implied Covenant of Good Faith

The Defendant also moves for summary judgment as to the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. See Defendant's Motion for Summary Judgment at 19–22.

The Defendant's core argument: an implied covenant claim cannot go forward when there is, as here, a written contract governing the relevant conduct. See id. at 21.

This, though, is not the law in New Jersey. See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 226, 229 (2005); Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001); cf. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 421 (1997); Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc., 69 N.J. 123, 130 (1976).

#### B. Unjust Enrichment

Finally, the Defendant moves for summary judgment on the Plaintiff's unjust enrichment claim. See Defendant's Motion for Summary Judgment at 22.

The Defendant says: an unjust enrichment claim cannot work when it simply duplicates the contentions that are pressed under a claim for breach of a written contract. See id.

As a matter of New Jersey law, this is a winning argument. See St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co. of N. Am., 32 N.J. 17, 22 (1960); C.B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co. of Newark, 14 N.J. 146, 162–63 (1953); accord, e.g., Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d Cir. 1983); Van Orman v. Am. Ins. Co., 680 F.2d 301, 311 (3d Cir. 1982).

---

[15] The parties press additional arguments for summary judgment as to this claim, but those are not discussed here because they plainly do not move the needle.

19

## VI. Conclusion

To summarize:

As to the Plaintiff's breach of contract claim (Count I), the Plaintiff's and Defendant's motions for summary judgment are denied.

As to the Plaintiff's implied covenant claim (Count II), the Defendant's motion for summary judgment is denied.[16]

As to the Plaintiff's unjust enrichment claim (Count III), the Defendant's motion for summary judgment is granted.

IT IS on this 27th day of January, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

[16] This motion is denied to the extent that Count II rests on roughly the same body of evidence as the Plaintiff's Count I breach of contract claim. To the extent Count II rests on other evidence, the Court does not now express an opinion as to Count II.